

1995 Decisions

2-28-1995

# Trans Penn Wax Corp. v McCandless

Precedential or Non-Precedential:

Docket 94-3093

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Trans Penn Wax Corp. v McCandless" (1995). *1995 Decisions.* Paper 65.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/65

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-3093
_____


TRANS PENN WAX CORPORATION;
ASTOR WAX CORPORATION;
ABI CORPORATION,
                    Petitioners

v.

MICHAEL McCANDLESS;
BENJAMIN REYNOLDS; BRADLEY PEARSON;
BRIAN PATTERSON; JERRY SNYDER
and JOHN E. BULKLEY,
                    Respondents

MAURICE B. COHILL, JR.,
                    Nominal Respondent

_____

On Petition for Writ of Mandamus
Related to W.D.Pa. Civil Action No. 93-cv-00126E
_____


Argued July 19, 1994

Before:  SCIRICA, LEWIS and ROSENN, <u>Circuit</u> <u>Judges</u>

(Filed  February 28, l995)


          ROBERT E. RIGRISH, ESQUIRE (Argued)
          Clark, Paul, Hoover & Mallard
          1360 Peachtree Street, Suite 900
          Atlanta, Georgia 30309

          KENNETH W. WARGO, ESQUIRE
          Quinn, Buseck, Leemhuis, Toohey & Kroto
          2222 West Grandview Boulevard
          Erie, Pennsylvania 16506-4508

          Attorneys for Petitioners

JOSEPH E. ALTOMARE, ESQUIRE (Argued)
Altomare & Barnhart
228 East Central Avenue
P.O. Box 373
Titusville, Pennsylvania 16354

Attorney for Respondents

_____

OPINION OF THE COURT
_____

SCIRICA, <u>Circuit</u> <u>Judge</u>.

In this appeal, we must decide whether section 301 of
the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)
(1988), mandates federal preemption of state contract and tort
claims brought by collective bargaining unit members based on
promises and misrepresentations of job security by their
employer, Trans Penn Wax Corporation.  Trans Penn contends these
claims are preempted because they relate to mandatory subjects of
collective bargaining and require interpretation of the
collective bargaining agreement.  Trans Penn also claims the
district court abused its discretion in remanding the case to
state court after the employees withdrew their sole federal cause
of action.

The employees brought suit in the Court of Common Pleas
of Crawford County, Pennsylvania, alleging breach of contract,
fraud, intentional infliction of emotional distress, and
violations of the Racketeer Influenced and Corrupt Organizations
Act ("RICO"), 18 U.S.C. §§ 1961-68 (1988 & Supp. V 1993), by
Trans Penn and its corporate affiliates, Astor Wax Corporation

and ABI Corporation.  The employees alleged Trans Penn induced them to decertify their union through contractual promises of job security and later breached those promises by terminating them. Defendants removed the case to the United States District Court for the Western District of Pennsylvania.  The employees then sought leave to delete their RICO claims and have the case remanded back to state court.  The district court granted their motion and then denied Trans Penn's subsequent motion for reconsideration.  McCandless v. Trans Penn Wax Corp., 840 F. Supp. 371 (W.D. Pa. 1993).

Trans Penn now petitions for a writ of mandamus directing the nominal respondent, Maurice Cohill, Jr., District Judge for the United States District Court for the Western District of Pennsylvania, to rescind his order remanding this case to the Court of Common Pleas of Crawford County, Pennsylvania and to exercise jurisdiction over the employees' claims.  We have jurisdiction to address this claim under the All Writs Act, 28 U.S.C. § 1651 (1988).[1]

We hold that resolution of the employees' contract and tort claims is not substantially dependent upon an analysis of the collective bargaining agreement and therefore section 301 does not require preemption.  We also find the district court

---

[1].  The text of 28 U.S.C. § 1651 provides in part:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

acted within its sound discretion in remanding after the employees withdrew their federal claims.  We will deny the petition for a writ of mandamus.

I.

A.

Trans Penn is a Pennsylvania corporation engaged in the manufacture of industrial wax products in Titusville, Pennsylvania.  The Oil, Chemical, and Atomic Worker's International Union ("OCAWI") represented Trans Penn employees for the purpose of collective bargaining beginning in 1988.  On January 15, 1990, OCAWI and Trans Penn entered into a collective bargaining agreement in which the company recognized OCAWI as the exclusive representative of full-time employees at the Titusville plant.

On April 27, 1990, a majority of the bargaining unit members voted to decertify OCAWI as their bargaining representative.  The election was certified by the National Labor Relations Board on May 7, 1990.  On the eve of the decertification election, Trans Penn presented the employees with a written "contract" for employment and guarantee of job security.  The document is entitled "Guarantee" and states:

> This is our PERSONAL GUARANTEE and your
> LEGAL CONTRACT that you . . . will have a job
> here . . . as long as you perform your work
> satisfactorily, follow our customary rules,
> and we are economically able to operate this
> institution successfully and work is
> available.  This GUARANTEE is given to you
> because of the FALSE UNION RUMOR that you
> will lose your job if the Union loses the

election . . . . This is our WRITTEN LEGAL
CONTRACT AND GUARANTEE TO YOU . . . .

App. at 62.

On October 30, 1991, Trans Penn terminated the six employees who are plaintiffs in this action, and later contracted with Manpower, Incorporated to provide temporary production workers.

## B.

The employees filed a complaint in the Court of Common Pleas of Crawford County, Pennsylvania, alleging Trans Penn had committed: (1) breach of contract by terminating the "Guarantee"; (2) fraud in making false and misleading statements concerning the "Guarantee" upon which the employees relied in decertifying the union; (3) intentional infliction of emotional distress; and (4) RICO violations under 18 U.S.C. § 1964(c).

Based on the employees' RICO claims, Trans Penn removed the action to the United States District Court for the Western District of Pennsylvania. The employees then sought leave to withdraw their RICO claims and remand the case to the Court of Common Pleas of Crawford County. The District Court granted the request and remanded the case to state court. Trans Penn asked for reconsideration, arguing section 301 of the LMRA preempted the employees' claims so that federal questions remained even after dismissal of the RICO claims. Trans Penn also claimed the employees had alleged unfair labor practices under sections 7 and 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157 & 158 (1988), which protect the rights of employees to organize

without interference from their employer.  Unfair labor practice charges must be brought before the National Labor Relations Board.  Huge v. Long's Hauling Co., 442 F. Supp. 1041, 1043 (W.D. Pa. 1977), aff'd, 590 F.2d 457 (3d Cir. 1978), cert. denied, 442 U.S. 918 (1979).

The district court denied Trans Penn's motion for reconsideration.  McCandless, 840 F. Supp. at 374.  The court found that the employees' complaint comprised state law claims based on the guarantee, not on the collective bargaining agreement.  Id.  The court also accepted the employees' argument that they were not raising unfair labor practice claims based on Trans Penn's execution of individual contracts, but rather were seeking state law tort and contract remedies based on those contracts.  Id. at 373.  Therefore, the court found no preemption under either the LMRA or the NLRA.  Id. at 373-74.

Trans Penn petitions for a writ of mandamus, contending the employees' claims substantially depend on an interpretation of the collective bargaining agreement between OCAWI and Trans Penn and therefore are preempted by section 301 of the LMRA.  Alternatively, if those claims are not preempted, Trans Penn characterizes the employees' deletion of their RICO claims as "forum shopping" and asserts the district court abused its discretion in remanding the case to state court.  Trans Penn does not raise the NLRA claim in its petition.

II.

A.

We must first address the threshold issue of whether we have jurisdiction to address this petition for a writ of mandamus. The power of the courts of appeals to review district court remand orders is circumscribed by 28 U.S.C. § 1447(d) (1988), which states, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise" with one exception not relevant here. While the language seems straightforward, analysis of § 1447(d) is not simple and its bar is not absolute. As one court has noted, "'[s]traightforward' is about the last word judges attach to § 1447(d) these days . . . ." In re Amoco Petroleum Additives Co., 964 F.2d 706, 708 (7th Cir. 1992).

The Supreme Court has interpreted the bar of § 1447(d) narrowly, stating it only applies to remand orders issued under 28 U.S.C. § 1447(c): "[Section 1447(d)] and § 1447(c) must be construed together . . . . This means that only remand orders issued under § 1447(c) and invoking the grounds specified therein--that removal was improvident and without jurisdiction-- are immune from review under § 1447(d)." Thermtron Prods. Inc. v. Hermansdorfer 423 U.S. 336, 345-46 (1976).[2] In Thermtron, a

_____

[2]. At the time Thermtron was decided, § 1447(c) provided in part:

> If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case . . . .

district court had remanded a case to state court because its docket was overloaded, and the Court held review appropriate because the remand had been based "on grounds not authorized by the removal statutes." Id. at 353. The Court allowed review of the remand order itself upon petition for a writ of mandamus. The Court held that "because an order remanding a removed action does not represent a final judgment reviewable by appeal, '[t]he remedy in such a case is by mandamus to compel action and not by writ of error to review what has been done.'" Id. at 352-53 (quoting Chicago & Alton R.R. v. Wiswall, 90 U.S. (23 Wall.) 507, 508 (1875)).

Thermtron and its progeny provide jurisdiction for appellate courts to review remand orders other than in cases removed "improvident[ly] and without jurisdiction." That is, § 1447(d) bars review of remands that are issued under § 1447(c). See PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993); Bradgate Assocs. v. Fellows, Read & Assocs., 999 F.2d 745, 750 & n.4 (3d Cir. 1993); see also Kolibash v. Committee on Legal Ethics, 872 F.2d 571, 573 (4th Cir. 1989); cf. Foster v. Mutual Fire, Marine & Inland Ins. Co., 986 F.2d 48, 50 (3d Cir. 1993). The language of § 1447(c) has changed since Thermtron. It now provides for remand based on a procedurally defective removal and requires remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction

(..continued)
28 U.S.C. § 1447(c) (1970).

. . . ." 28 U.S.C. § 1447(c) (1988).[3] Thus, Thermtron's holding is applicable today to remands based on a lack of subject matter jurisdiction or for defects in removal procedure. PAS, 7 F.3d at 352; In re Amoco, 964 F.2d at 708.

Forty years before Thermtron, the Supreme Court had created another partial exception to the bar on review in Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140 (1934). In Waco, the Supreme Court addressed a case where removal had been based on the entry of a diverse third party into the underlying dispute. The district court dismissed the third party and remanded for lack of jurisdiction because diversity had been destroyed. Id. at 142. The Supreme Court held that no appeal could lie from the remand order itself, but that "in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably this order is the subject of an appeal . . . ." Id. at 143. The Court in Waco did not create an exception to the bar of review of remand orders; it held only that separable decisions underlying and preceding the remand could be reviewed. Id. at 143-44; see Rhonda Wasserman, Rethinking Review of Remands: Proposed Amendments to the Federal Removal Statute, 43 Emory L.J. 83, 112 (1994). Courts of appeals have relied on the Waco decision to provide an avenue to review decisions underlying remand orders where Thermtron would otherwise seem to bar review

_____

[3]. For the text of § 1447(c) at the time Thermtron was decided, see supra note 2.

altogether (i.e., where the remand was based either on a removal defect or because the court lacked subject matter jurisdiction). See, e.g., Powers v. Southland Corp., 4 F.3d 223, 224 (3d Cir. 1993); Mitchell v. Carlson, 896 F.2d 128, 131-33 (5th Cir. 1990); Allen v. Ferguson, 791 F.2d 611, 613 & n.3, 614 (7th Cir. 1986). We have further extended Waco's holding in some circumstances to allow review of the remand order itself in addition to review of the underlying decision. Carr v. American Red Cross, 17 F.3d 671, 680 (3d Cir. 1994).

Courts of appeals have applied the exceptions to the bar of § 1447(d) initiated by Waco and Thermtron to a variety of remand situations, such that the bar now governs a fairly narrow range of cases. See, e.g., Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1210-11 (3d Cir.) (interpreting Thermtron to mean the bar of § 1447(d) applies only to cases remanded on § 1447(c) grounds), cert. denied, 502 U.S. 908 (1991); Baldridge v. Kentucky-Ohio Transp., Inc., 983 F.2d 1341, 1345 (6th Cir. 1993) (noting decisions that "reflect the prevailing view that § 1447(d)'s prohibition against appellate review is fairly narrow"); 14A Charles A. Wright et al., Federal Practice and Procedure § 3740, at 237 (Supp. 1994) (observing the Thermtron exception, while conceived as narrow, has been applied in "numerous decisions"). The two lines of exceptions are reasonably distinct, however, both as a matter of theory and as a matter of practical impact. Cases under Thermtron are analytically simple: Once the court determines that the remand was not pursuant to § 1447(c), the bar of § 1447(d) is

inapplicable and review is appropriate.  Cases following Waco,
however, are more complex, as the court must first determine
whether there was a separable decision underlying the remand
order that preceded the remand order "in logic and in fact," and
then whether the underlying decision is, in fact, reviewable
(normally an issue of whether it is final for purposes of 28
U.S.C. § 1291).  See, e.g., Aliota v. Graham, 984 F.2d 1350,
1352-53 (3d Cir.), cert. denied, 114 S. Ct. 68 (1993); Powers, 4
F.3d at 226-31.  The Waco analysis adds further complexity in
those circumstances where the court can review the remand order
itself.  See Carr, 17 F.3d at 680.

Selecting the appropriate analytical framework has
proved difficult.  One important element is the timing of the
lack of subject matter jurisdiction, as a remand only falls under
§ 1447(c) if the removal itself was jurisdictionally improper,
not if the defect arose after removal.  In re Amoco, 964 F.2d at
708 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343
(1988)); see also Baldridge, 983 F.2d at 1348 & nn.11-12.  Remand
decisions based on grounds other than (1) that jurisdiction was
improper at the time of removal or (2) that the removal was
procedurally defective are therefore reviewable under Thermtron
as they do not implicate § 1447(c).

So many different patterns underlie remand decisions
that we cannot comprehensively categorize them here.  We can,
however, set the present case within the remand jurisprudence.
This case was originally removed based on federal question
jurisdiction because the complaint included counts alleging RICO

violations. 18 U.S.C. §§ 1961-68. The plaintiffs sought and were granted a dismissal of the RICO counts, thus leaving the district court with supplemental jurisdiction under 28 U.S.C. § 1367 (Supp. V 1993).

After dismissing the RICO counts, the district court declined to exercise supplemental jurisdiction and remanded the case to state court. We would have had jurisdiction to review the remand had defendants petitioned for a writ of mandamus at that point. As the Supreme Court has said, "Section[] . . . 1447(c) . . . do[es] not apply to cases over which a federal court has pendent jurisdiction. Thus, the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all." Carnegie-Mellon, 484 U.S. at 355 n.11. At least eight other circuit courts have agreed, and have held the discretionary decision not to exercise jurisdiction over pendent state claims is not a remand under § 1447(c). Accordingly, they have allowed review of remand orders based on the discretionary refusal to exercise supplemental jurisdiction. See Jamison v. Wiley, 14 F.3d 222, 231-33 (4th Cir. 1994); Burks v. Amerada Hess Corp., 8 F.3d 301, 304 (5th Cir. 1993); In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l, Local No. 173, 983 F.2d 725, 727 (6th Cir. 1993); Albertson's, Inc. v. Carrigan, 982 F.2d 1478, 1479-80 (10th Cir. 1993); In re Surinam Airways Holding Co., 974 F.2d 1255, 1257 (11th Cir. 1992); J.O. v. Alton Community Unit Sch. Dist. 11, 909 F.2d 267, 269-71 (7th Cir. 1990); In re Life Ins. Co. of N. Am., 857 F.2d 1190, 1193 n.1 (8th Cir. 1988);

Price v. PSA, Inc., 829 F.2d 871, 873-74 (9th Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

We have allowed review of discretionary remands based on the decision to decline supplemental jurisdiction.[4]  In PAS v. Travelers Insurance Co., 7 F.3d 349 (3d Cir. 1993), the plaintiff brought suit in state court.  Three of its four counts were undisputedly governed by the Employee Retirement Income Security Act ("ERISA") and the defendant removed on that basis.  The plaintiff requested that the fourth count, based on state law, be remanded to state court.  Defendants claimed the state statutes were preempted by ERISA.  Id. at 351.

After concluding that the state statutes were not preempted by ERISA, the district court exercised its discretion to remand the state claim because it involved a "novel and complex issue of state law," a basis for remand provided by 28 U.S.C. § 1367(c)(1).  Holding that the state action could become dispositive of the federal claims, the district court dismissed the federal action without prejudice.  After the district court denied defendant's motion for reconsideration, the defendant petitioned for a writ of mandamus.  Id.

We held in PAS that jurisdiction to review the remand decision was proper, notwithstanding § 1447(d).  Id. at 352.  The district court's decision was neither for a defect in the removal

---

[4].  Indeed, we have held more generally that remands not covered by § 1447(c) are not barred from review by § 1447(d).  See, e.g., Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1211 (3d Cir. 1991); Hewlett v. Davis, 844 F.2d 109, 115 (3d Cir. 1988).

procedure nor for lack of district court subject matter jurisdiction, but rather was based on an exercise of the district court's discretion to decline to exercise supplemental jurisdiction. Section 1447(c) and (d) therefore did not apply and review was proper. Id.; cf. Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994).[5] We then proceeded to consider the merits of defendant's claim that ERISA did in fact preempt the state law claim. PAS, 7 F.3d at 354-57.

Here, as in PAS, the district court properly removed the case based on federal question jurisdiction and exercised its discretion under the supplemental jurisdiction statute[6] to remand

[5]. In Carr, federal jurisdiction was predicated on the joinder of the Red Cross, whose federal charter conferred federal jurisdiction over cases to which it was a party. Carr, 17 F.3d at 674. The Red Cross was subsequently dismissed as a party, and the district court remanded the case pursuant to 28 U.S.C. § 1367(c), as it declined to exercise supplemental jurisdiction. Id. Having assumed that § 1447(d) presented a problem for review in the first instance, we held the district court's dismissal reviewable on appeal based on the Waco exception to § 1447(d) combined with the notion that the dismissal was final under the collateral final order doctrine. Id. at 675-77. We continued by deciding that the remand order was also reviewable. Id. at 680.

PAS and Carr are two paths to the same result. While in Carr the court assessed the Waco elements of separability and then finality for purposes of appeal of the decision which underlay the remand order, PAS went by way of the Thermtron exception straight to review of the remand order and its underlying reasoning. We think the PAS route, when available, is the more felicitous method, and we therefore use it here. We do not intimate any view on how future courts should decide which method better serves the particular facts of their cases.

[6]. Prior to the 1990 enactment of this version of 28 U.S.C. § 1367, we held, "Absent `extraordinary circumstances,' a district court in this circuit is powerless to hear claims lacking an independent jurisdictional basis, and `time already invested in litigating the state cause of action is an insufficient reason to

the case.  Also in both cases the district court determined the state claims were not preempted.  The only difference between this case and PAS is that the district court here made the preemption decision on a motion for reconsideration after, rather than before, it had granted plaintiff's motion for remand.  We see no reason why this should require a different result.

The timing of the motion for reconsideration, after the district court's remand, raises a potential problem for our review of the remand order.[7]  The question is whether after

(..continued)
sustain the exercise of pendent jurisdiction.'"  Lovell Mfg. v. Export-Import Bank of the United States, 843 F.2d 725, 735 (3d Cir. 1988) (quoting Weaver v. Marine Bank, 683 F.2d 744, 746 (3d Cir. 1982)).  However, in Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277 (3d Cir. 1993), we observed that even if Lovell mandated remand of state claims following any dismissal of the federal claim:

> Lovell was decided prior to the passage of the current version of § 1367.  The language in § 1367 expressly contradicts [this] reading of Lovell in that it states that federal courts shall exercise supplemental jurisdiction over pendent claims arising out of the same case or controversy and may decline to exercise jurisdiction if all federal claims are dismissed.

Id. at 1285 n.14.  Because at the time of removal "there was a colorable federal claim" under RICO, the district court had original jurisdiction of that claim, Weaver, 683 F.2d at 747, and § 1367(a) gave the court supplemental jurisdiction over the pendent state law claims.  The court retained supplemental jurisdiction until it declined to exercise that jurisdiction under § 1367(c).

[7].  We note that were the district court considering preemption as a basis to assert jurisdiction in the first instance, the bar of § 1447(d) may well apply and it is not clear that the Waco exception could be used.  See, e.g., Nutter v. Monongahela Power Co., 4 F.3d 319, 321-22 (4th Cir. 1993) (holding where "complete preemption was the basis for the district court's jurisdiction,

remand the district court had jurisdiction in order to reconsider its remand and whether the preemption issue upon which the motion for reconsideration was based is properly before us.

The general rule is that a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court. See Hunt v. Acromed Corp., 961 F.2d 1079, 1081 (3d Cir. 1992). This view is premised on both the language of § 1447(c) and (d) and the need to establish a determinable jurisdictional event after which the state court can exercise control over the case without fear of further federal interference. The district court is also barred from reconsidering its decision if the remand was under § 1447(c) and the case thereby falls under the bar of § 1447(d). See, e.g., New Orleans Public Serv., Inc. v. Majoue, 802 F.2d 166, 167 (5th Cir. 1986) (per curiam); FDIC v. Santiago Plaza, 598 F.2d 634, 636 (1st Cir. 1979) (per curiam). But the physical mailing of the certified copy is the key jurisdictional event to divest the district court of jurisdiction, because a remand order is not self-executing. Hunt, 961 F.2d at 1081 (citing Bucy v. Nevada Constr. Co., 125 F.2d 213 (9th Cir. 1942)).

(..continued)
the court's findings regarding preemption and jurisdiction are indistinguishable," and thus § 1447(d) applies to bar review; Waco would also not provide an exception to allow review); Whitman v. Raley's Inc., 886 F.2d 1177, 1181 (9th Cir. 1989) (holding no review allowed because "[a] remand based on lack of 'complete preemption' is a remand required by 28 U.S.C. § 1447(c) . . . ."). This would present a significant jurisdictional problem given the bar to review in § 1447(d), but as we explain below it is not the situation we face here.

The courts of appeals have debated the issue of whether a district court can freely reconsider its own remand order when the bar of § 1447(d) is not implicated. Some courts have held a district court has jurisdiction to reconsider such a remand order within the time for filing an appeal unless the remand is on § 1447(c) grounds.[8] See, e.g., Thomas v. LTV Corp., 39 F.3d 611, 615-16 (5th Cir. 1994) (holding a remand based on 28 U.S.C. § 1367 is not a § 1447(c) remand and therefore is not barred by § 1447(d); such a remand is reviewable by the district court within the time for filing an appeal); J.O. v. Alton Community Unit Sch. Dist. 11, 909 F.2d 267, 273-74 (7th Cir. 1990) (holding that where an exception to the appellate review of remands applies the district court also can reconsider its order of remand during the time for filing of a notice of appeal).

Other courts have construed the district court's jurisdiction to reconsider remand orders more narrowly. In Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d 112, 115 (4th Cir. 1979), cert. denied, 445 U.S. 911 (1980), the court held the mere entry of the district court's remand order divested it of

---

[8]. Where the district court's reconsideration of its own remand is appropriate because the bar of § 1447(d) does not apply, some courts have been indifferent as to whether a certified copy of the remand order was sent. In re Digicon Marine, Inc., 966 F.2d 158, 160-61 (5th Cir. 1992). Thus, the issue of whether a certified copy of the remand order has been sent to the state court may only be relevant when the bar of § 1447(d) applies. See In re Shell Oil Co., 932 F.2d 1523, 1528 (5th Cir. 1991), cert. denied, 502 U.S. 1049 (1992). We need not decide whether to follow that view, however, since as we discuss below there is no evidence in the record that a certified copy of the remand order was sent to the state court.

jurisdiction to reconsider the order. While the remand fell under § 1447(c) and was barred from review by § 1447(d) anyway, the court also took a more restrictive view of when the district court was divested of jurisdiction. Similarly, in Santiago Plaza the court held § 1447(d) "has been universally construed to prohibit even a motion for reconsideration once the state court has resumed jurisdiction." 598 F.2d at 636. The court did not discuss the possibility of the Thermtron exception's application, nor did it explain the basis for the district court's remand. Significantly, both cases were decided shortly after Thermtron when neither court had the benefit of the nearly two decades of judicial expansion of Thermtron's holding upon which we and other courts have been able to draw.

Our own precedent is inconclusive on the issue of when a district court's jurisdiction to reconsider its own remand order ends. One case, Hunt v. Acromed Corp., 961 F.2d 1079 (3d Cir. 1992), appears to take a narrow view of the district court's jurisdiction to reconsider a case once it has remanded it. In Hunt, we held the district court lost jurisdiction after sending a certified copy of the order of remand to the state court so that it could not consider a motion to file an amended notice of removal. 961 F.2d at 1082. We observed that a timely motion to reconsider a remand order would be barred after a certified copy had been mailed. Id. at 1082 n.6. We also observed that while the bar of § 1447(d) did not directly apply since the appeal was from a denial of a motion to amend the notice of removal and not from the removal itself, the policy underlying § 1447(d) was

implicated. Id. at 1082. We then noted that "[t]he remand in this case could not possibly have been subject to review under an exception to 28 U.S.C. § 1447(d)." Id. at 1082 n.9. Because no exception to § 1447(d) applied, Hunt is more analogous to Santiago Plaza than to J.O or Thomas (where an exception to § 1447(d) did apply).

Thus, where the bar of § 1447(d) applies our precedent suggests a district court would lack jurisdiction to reconsider its order of remand once a certified copy of the remand order has been sent to the state court. We have not faced the question of whether a district court has the power to reconsider a remand order either when a certified copy of the order has not yet been sent or when the remand itself is not covered by § 1447(d). In this case we have both factors. There is no evidence in the record that a certified copy of the remand order was sent to state court,[9] cf. J.O., 909 F.2d at 273-74 & n.5 (allowing district court to reconsider its remand order during the time for filing a notice of appeal when the record shows no evidence a certified copy was mailed to the state court), and we have held that the initial remand was not covered by § 1447(d).

Because this issue has not been squarely presented to us before, we look to a persuasive decision from the Court of Appeals for the Fifth Circuit, Thomas v. LTV Corp, 39 F.3d 611 (5th Cir. 1994), whose facts are similar to this case. In

---

[9]. The district court's remand order was entered on October 12, 1993, and on October 29, 1993, Trans Penn filed its motion for reconsideration.

Thomas, a union employee who had been fired for poor attendance brought suit in state court, alleging breach of contract, infliction of emotional distress, and wrongful discharge under the Texas Labor Code.  Id. at 614-15.  LTV, the employer, removed the case claiming section 301 of the LMRA preempted Thomas' state law claims.  Id.  After removal, the district court granted LTV's motion for summary judgment on all but the wrongful discharge claim, finding the other claims preempted and barred by the LMRA's six-month statute of limitations.  Id. at 615.  After the district court remanded the wrongful discharge claim to state court, LTV filed a motion for reconsideration.  The district court changed its mind, held the wrongful discharge claim preempted by section 301, and dismissed that claim as well.  Id.

Thomas asserted before the court of appeals that the district court had no jurisdiction to reconsider its order of remand.  Id.  The Court of Appeals for the Fifth Circuit disagreed, holding because the remand was a discretionary decision to decline supplemental jurisdiction under 28 U.S.C. § 1367(c), it was not a remand under § 1447(c).  Id.  The court held the bar of § 1447(d) did not apply, and therefore the district court had jurisdiction to reconsider its order of remand.  Id. at 615-16.  We agree with this analysis.  We hold the district court here had jurisdiction to reconsider its order of remand, first because there is no evidence in the record that the district court had sent a certified copy of the remand order to the state court, and second because the initial remand was not

covered by § 1447(c) and the bar of § 1447(d) is therefore not implicated.

In sum, with respect to the rather intricate jurisdictional posture of this case, we hold: this case falls under the Thermtron exception to § 1447(d)'s bar of review of remand orders; we have jurisdiction to review this case on writ of mandamus because the order of remand being appealed is not final; and even though the district court decided the preemption issue on a motion for reconsideration it did not lack jurisdiction to make that determination.

B.

Had we determined this case fell under the Waco line of cases we would review the decision underlying the remand order (if at all) as an appeal. Also we would have had to address the question of finality, the question of the appropriate standard of review of the preemption issue, and whether the remand order itself could be reviewed.[10] But the appropriate manner of review under Thermtron of a remand order is mandamus, and Trans Penn has properly petitioned for mandamus rather than filed an appeal. The All Writs Act, 28 U.S.C. § 1651, empowers courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Supreme Court has stated:

_____

[10]. On allowing review of the remand order itself (rather than just review of the decision underlying the remand), compare Waco, 293 U.S. at 143 (holding no review of the order of remand allowed), with Carr, 17 F.3d at 680 (holding review of the order of remand allowed when the Waco exception applies).

> [B]ecause an order remanding a removed action does not represent a final judgment reviewable by appeal, "[t]he remedy in such a case is by mandamus to compel action, and not by writ of error to review what has been done." Absent statutory prohibitions, when a remand order is challenged by a petition for mandamus in an appellate court, "the power of the court to issue the mandamus would be undoubted."

Thermtron, 423 U.S. at 352-53 (citations omitted).

A petition for a writ of mandamus must demonstrate the district court committed a "clear error of law `at least approach[ing] the magnitude of an unauthorized exercise of judicial power, or a failure to use that power when there is a duty to do so.'" Richman Bros. Records, Inc. v. U.S. Sprint Communications Co., 953 F.2d 1431, 1448 (3d Cir. 1991) (quoting Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir. 1988)), cert. denied, 112 S. Ct. 3056 (1992). The writ is an extraordinary remedy, only to be used in exceptional circumstances where the party seeking it demonstrates a clear and indisputable right to the writ. Carteret Sav. Bank, FA v. Shushan, 919 F.2d 225, 232 (3d Cir. 1990), cert. denied, 113 S. Ct. 61 (1992). This stringent standard governs our review.

### III.

Ordinarily, a case is not removable to federal court simply because, as here, the defendant raises federal preemption as a defense. Rather, removal on the basis of federal question jurisdiction, 28 U.S.C. §§ 1331 & 1441 (1988 & Supp. V 1993), generally requires that a federal question be presented on the

face of the plaintiff's properly pleaded complaint. This well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). In certain limited circumstances, however, a defendant may be able to remove a case notwithstanding a complaint's apparent grounding in state law. One such circumstance occurs when a state-law claim is preempted under section 301 of the LMRA. Id. at 393; see also Goepel v. National Postal Mail Handlers Union, 36 F.3d 306, 311 (3d Cir. 1994) (recognizing LMRA preemption), petition for cert. filed, 63 U.S.L.W. 3574 (U.S. Jan. 23, 1995) (No. 94-1258); Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R., 858 F.2d 936, 941 (3d Cir. 1988) (same).[11]

Trans Penn contends that plaintiffs' claims in this case are, in fact, "completely preempted" in this manner, requiring the district court to retain jurisdiction over the case because of the implicit federal questions that Trans Penn believes are raised on the face of the complaint. In answer, we first discuss the contours of section 301 preemption and then evaluate whether plaintiffs' claims are, indeed, preempted.

A.

---

[11]. We have discussed elsewhere the contours of the well-pleaded complaint rule and its corollary principle, the "complete preemption doctrine," and need not duplicate that discussion here. See Goepel, 36 F.3d at 310-11; Railway Labor Executives Ass'n, 858 F.2d at 939-42.

Section 301 of the Labor Management Relations Act provides for federal jurisdiction over disputes regarding collective bargaining agreements, and mandates the application of uniform federal law to resolve such disputes. The statute provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). While the provision only explicitly refers to federal jurisdiction, the Supreme Court has held "that § 301(a) is more than jurisdictional--that it authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements . . . ." Textile Workers Union of Am. v. Lincoln Mills, 353 U.S. 448, 450-51 (1957) (footnote omitted). The exclusive application of federal law serves important national policies: "[Section] 301 mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988) (footnote omitted).

The Supreme Court has set forth a clear "principle of § 301 pre-emption" to guide our inquiry:
> [I]f the resolution of a state-law claim depends upon the meaning of a collective-

> bargaining agreement, the application of
> state law (which might lead to inconsistent
> results since there could be as many state-
> law principles as there are States) is pre-
> empted and federal labor-law principles--
> necessarily uniform throughout the Nation--
> must be employed to resolve the dispute.

Id. at 405-06.  The preeminence of federal law in interpreting
collective bargaining agreements applies to tort as well as
contract actions.  In Allis-Chalmers Corp. v. Lueck, 471 U.S.
202, 210-11 (1985), the Court held "the pre-emptive effect of §
301 must extend beyond suits alleging contract violations," to
"questions relating to what the parties to a labor agreement
agreed, and what legal consequences were intended to flow from
breaches of that agreement," whether such questions arise in a
tort or contract suit.  Thus, where a plaintiff sued his
employer, Allis-Chalmers, in tort for the bad-faith handling of
his insurance claims and his insurance policy was incorporated by
reference in the collective bargaining agreement between the
plaintiff's union and his employer, the court held section 301
preempted the tort claims.  The Court reasoned, "It is a question
of federal contract interpretation whether there was an
obligation under this labor contract to provide the payments in a
timely manner, and, if so, whether Allis-Chalmers' conduct
breached that implied contract provision."  Id. at 215.

At the same time, the mere existence of a collective
bargaining agreement does not prevent an individual from bringing
state law claims based on some independent agreement or
obligation.  The plaintiffs in Caterpillar had been hired for

positions covered by a collective bargaining agreement but later assumed management and other positions outside the bargaining unit. At that time, Caterpillar allegedly made statements to the plaintiffs guaranteeing their employment, and when it later downgraded the plaintiffs to unionized positions it assured them these positions were temporary. When Caterpillar later laid off the plaintiffs, they sued claiming breach of the individual employment contracts.

The Supreme Court held "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights <u>independent</u> of that agreement, including state-law contract rights, so long as the contract relied upon is <u>not</u> a collective-bargaining agreement."[12] <u>Caterpillar</u>, 482 U.S. at 396. The Court observed the plaintiffs' complaint neither relied on the collective bargaining agreement indirectly nor addressed the relationship between the individual contracts and the agreement. <u>Id.</u> at 395. The Court also noted that individual

---

[12]. The Court had noted this limit on § 301 in <u>Allis-Chalmers</u>:

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. . . . [I]t would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

471 U.S. at 211–212.

employment contracts could not subtract from collective agreements but they could create additional rights.  Id. at 396.

Furthermore, a plaintiff may bring a state law tort action against an employer, even where he could have brought a similar claim based on a provision in his collective bargaining agreement, so long as the state claim does not require interpretation of the collective bargaining agreement.  The tort claim falls under state law even though the claim based on the bargaining agreement provision must apply federal law pursuant to section 301.  In Lingle, 486 U.S. at 401, the plaintiff notified her employer she had been injured in the course of her employment and requested workers' compensation for medical expenses, but the employer discharged her for allegedly filing a false worker's compensation claim.  Her union filed a grievance under a collective bargaining agreement provision protecting employees from discharge except for "proper" or "just" cause, and she filed a retaliatory discharge action in an Illinois state court.  Id. at 401-02.  The employer removed the action to federal district court and filed a motion to dismiss the case pursuant to section 301.

The Court held section 301 did not preempt the state law retaliatory discharge claim because it could be resolved without interpretation of the collective bargaining agreement. Id. at 407.  The issues raised--whether the employee was discharged or threatened with discharge to deter her from exercising her legal rights--were "purely factual questions pertain[ing] to the conduct of the employee and the conduct and

motivation of the employer."  Id.  It did not matter, the Court said, that the claim under the collective bargaining agreement would involve the same factual issues, for the state law claim was "`independent' of the collective-bargaining agreement in the sense of `independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement."  Id.

We followed this precedent in Berda v. CBS, Inc., 881 F.2d 20 (3d Cir. 1989), cert. denied, 493 U.S. 1062 (1990), where we allowed an employee to bring state contract, promissory estoppel, and tort claims against his employer based on alleged misrepresentations made before the employee became a member of the bargaining unit.  Berda, 881 F.2d at 20.  The plaintiff claimed the employer violated its oral promises of job security by laying him off.  We found his claims did not "substantially depend" on the interpretation of a collective bargaining agreement.  Id. at 25.  Rather, they were based on the oral agreement, which could create rights in addition to those under the bargaining agreement.  We noted that it was of no significance that the alleged misrepresentations in the oral statements related to layoffs, and layoffs were referred to in the bargaining agreement, so long as the plaintiff did not need to refer to the bargaining agreement in making his claims.  Id. at 27.

### B.

We now turn to the employees' particular claims, which Trans Penn asserts are inextricably intertwined with and

substantially dependent on the terms of the collective bargaining agreement.  At the outset, we reject Trans Penn's general contention that because the "foundation" of plaintiffs' state tort and contract claims--job security in the face of layoffs or discharge--is a mandatory subject of collective bargaining under federal labor law and is covered in their bargaining agreement, the claims are preempted.[13]  The employees have not alleged Trans

---

13.  Trans Penn seeks support for this proposition in Angst v. Mack Trucks, Inc., 969 F.2d 1530 (3d Cir. 1992), and Darden v. United States Steel Corp., 830 F.2d 1116 (11th Cir. 1987). Neither case, however, does more than apply the standard rule that § 301 preempts claims either founded directly on rights created by a collective bargaining agreement or substantially dependent upon an analysis of a collective bargaining agreement. Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987).

     In Angst, employees brought suit against Mack Trucks alleging a violation of a "buy-out plan" Mack Trucks and the employees negotiated as a modification of their collective bargaining agreement.  969 F.2d at 1535.  Because the state law claims depended on interpretation of the collective bargaining agreement and its modifications, the claims were preempted by § 301.  Id. at 1536-37.  While we distinguished Caterpillar and Berda because "the aggrieved employees [in those cases] were not represented by a union and thus were not subject to collectively bargained labor agreements," id. at 1537, we did not indicate that all claims arising while an individual is subject to a collective bargaining agreement are preempted by § 301.  The tort claim in Lingle, for example, arose while the employee was represented by a union, and the collective bargaining agreement provided her with a grievance procedure to address her claim. Lingle, 486 U.S. at 401-02.

     Similarly, the Darden court found § 301 preemption after finding the employees' claims required examination of the collective bargaining agreement. The court noted that "plaintiffs actually allege a violation of the collective bargaining agreement in their complaints.  Having done so, it is disingenuous for them now to maintain that their claims are not 'inextricably intertwined with consideration of the terms of the labor contract.'"  Darden, 830 F.2d at 1120 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)).

Penn violated the terms and conditions of the collective bargaining agreement.  While the state law claims here relate to job security, they are grounded in the guarantee given the employees by Trans Penn.[14]  The collective bargaining agreement does not mention the individual employment contracts, nor does Trans Penn explain how the claims are substantially dependent on analysis of the collective bargaining agreement.  The fact that job security is addressed in the collective bargaining agreement is "of no consequence, because [the employees] need not refer to . . . the collective bargaining agreement in order to make out [their] claim."  Berda, 881 F.2d at 27.

Berda, Caterpillar, and Lingle show that "there is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements."  Lingle, 486 U.S. at 411.  Our examination of the employees' contract, fraud, and emotional distress claims demonstrates they assert substantive rights independent of the collective bargaining agreement.

_____

[14].  We have stated, "[E]mployees who are members of a collective bargaining unit cannot negotiate individual contracts that are inconsistent with the . . . collective bargaining agreement." Malia v. RCA Corp., 794 F.2d 909, 912 (3d Cir. 1986), cert. denied, 482 U.S. 927 (1987).  However, in Malia we held an employee could sue under state law based on an oral labor contract he negotiated while a member of a collective bargaining unit.  We stated, "Nothing in the LMRA prevents an individual-- whether that individual is to be newly hired or promoted from a bargaining unit--from negotiating an employment contract for a management position."  Malia, 794 F.2d at 913.  Similarly, nothing in the LMRA prevents an individual from negotiating a contract to take effect after the termination of a collective bargaining agreement.

## 1. Breach of Contract

The employees charge Trans Penn breached the guarantee contracts when it dismissed them on October 30, 1991.[15]  Trans Penn contends that adjudication of the employees' contract claims requires an analysis and interpretation of the terms of the collective bargaining agreement.

The employees may assert legal rights, including state law contract rights, provided they are independent of the collective bargaining agreement.  Caterpillar, 482 U.S. at 396. Here, the employees allege Trans Penn violated its duties and responsibilities under the separate guarantee to provide continued employment.  The duties claimed to be owed to Trans Penn employees are firmly rooted in the separate guarantee, not the collective bargaining agreement.

Under Pennsylvania law, "[i]n order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss." Logan v. Mirror Printing Co., 600 A.2d 225, 226 (Pa. Super. Ct. 1991) (citing Exton Drive-In, Inc. v. Home Indem. Co., 261 A.2d 319 (Pa. 1969), cert. denied, 400 U.S. 819 (1970)).  Where one party to a contract breaches without any legal justification, the non-breaching party may receive whatever damages it suffered (unless

_____

[15]. The complaint states, "Plaintiffs believe and therefore aver that their termination from employment with Defendants did not result from any diminution in Defendants' business sufficient to justify termination under the terms of the Contract."  First Am. Compl. ¶ 26.  The "Contract" refers to the guarantee, not the collective bargaining agreement.

the contract provides otherwise) if: "(1) [the damages] were such as would naturally and ordinarily result from the breach, or (2) [the damages] were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) [the damages] can be proved with reasonable certainty." Logan, 600 A.2d at 226 (citing Taylor v. Kaufhold, 84 A.2d 347, 351 (Pa. 1951)).

Considering these factors, assessing contract liability under Pennsylvania law will not require an analysis or interpretation of the collective bargaining agreement. "Section 301 says nothing about the content or validity of individual employment contracts." Caterpillar, 482 U.S. at 394. Rather, these are issues to be resolved under state law.

## 2. Fraud

Trans Penn insists section 301 preempts the employees' fraud claims[16] because proof of fraud requires clear and convincing evidence of justifiable reliance by the recipient upon the misrepresentation. Such an analysis, Trans Penn argues, requires an interpretation of the collective bargaining agreement to determine if the employees justifiably relied on representations guaranteeing job security. We do not agree.

Pennsylvania law requires the plaintiff alleging fraud to prove the following elements by clear and convincing evidence:

---

[16]. The employees allege, in part, "[Trans Penn] knowing the same to be false and misleading when made, and never intending to honor same, . . . intentionally, recklessly, [and] maliciously . . . represented and promised job security [for the purpose of inducing the work force to decertify the union]." Id. ¶ 35.

"(1) a misrepresentation; (2) a fraudulent utterance of it; (3) the maker's intent that the recipient be induced thereby to act; (4) the recipient's justifiable reliance on the misrepresentation; and (5) damage to the recipient proximately caused." Seven v. Kelshaw, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992).

We conclude that the employees need not depend on the collective bargaining agreement to satisfy these elements of state law fraud. This is not a situation, as in Allis-Chalmers, where the alleged tort is a violation of duties assumed in the collective bargaining agreement. 471 U.S. at 215. An examination of the employer's behavior, motivation, and statements does not substantially depend upon the terms of the collective bargaining agreement. The essence of the employees' case is proof of justifiable reliance on the separate guarantees, not on the collective bargaining agreements. As in Lingle, 486 U.S. at 407, "[e]ach of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer," and may be appropriately resolved under state law.

### 3. Intentional Infliction of Emotional Distress

Trans Penn maintains resolution of the employees' claim of intentional infliction of emotional distress requires an analysis of the collective bargaining agreement because the terms of that agreement, "which gave the plaintiffs seniority benefits and protection from arbitrary discharge, provide the context against which the relative effects of the `Guarantee' and subsequent layoffs must be measured." Appellants' Br. at 20

(citation omitted).  Furthermore, Trans Penn asserts that assessing the "outrageousness" of these facts requires analysis of the terms of the collective bargaining agreement.[17]  Id.  We disagree.

Pennsylvania courts recognize a cause of action under the Restatement (Second) of Torts section 46 (1965) for the intentional infliction of emotional distress.[18]  Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1183-84 (Pa. Super. Ct. 1989).  To prevail, plaintiff must prove defendant, by extreme and outrageous conduct, intentionally or recklessly caused plaintiff severe emotional distress.  Motheral v. Burkhart, 583 A.2d 1180, 1188 (Pa. Super. Ct. 1990).  Liability will be found only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (quoting Restatement (Second) of Torts § 46 cmt. d).

---

[17].  The employees' complaint alleges "the conduct of the Defendants with respect to this Plaintiff was intentional, wanton, malicious, reckless and outrageous.  As a direct and proximate result of the conduct . . . this Plaintiff has suffered great, severe and actual mental distress and chronic depression . . . ."  Id. ¶¶ 47 & 48.

[18].  The Restatement provides:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability  for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46 (1965).

We fail to see how evaluating Trans Penn's conduct requires interpretation of the collective bargaining agreement and substantially depends on its construction. The same is true for the employees' allegation that they suffered severe mental distress--the analysis under state law will only focus on Trans Penn's conduct while inducing the employees to enter into the "Guarantee" agreement and on the employees' response. This factual inquiry does not implicate any analysis of terms or rights created by the collective bargaining agreement. See Lingle, 486 U.S. at 407.

IV.

Because we conclude that the employees' claims are not preempted under section 301, we turn to Trans Penn's alternative argument. Trans Penn characterizes the employees' deletion of their RICO claims as "forum manipulation" and contends the district court abused its discretion in remanding back to the Court of Common Pleas.

It is settled that district courts have discretion to remand to state court "a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988). In deciding whether to remand, the district court should consider what best serves the principles of economy, convenience, fairness, and comity. Id. Of course, the district court can consider whether the plaintiff has engaged in any manipulative tactics. Therefore, an effort by the plaintiff

to manipulate the forum should be considered along with other factors in the decision whether to remand.  Id.

The employees note that they propounded and served interrogatories and requests for production on the defendants seeking evidence to substantiate their RICO claims.  They say they withdrew the RICO claims because the responses to these discovery requests proved inadequate to substantiate these claims.

The district court held, "Taking into consideration the values of judicial economy, convenience, fairness and comity, we do not believe that the present case should remain within our jurisdiction."  McCandless, 840 F. Supp. at 374.  The court also described the employees' assertions as "resulting from what they perceived as a valid, enforceable employment contract which was allegedly fraudulent."  Id.  The district court then concluded, "This is not an action to challenge the conduct of the employer to coerce anti-union votes.  It is an action for damages for breach of contract, and therefore, is better suited to be adjudicated by the Pennsylvania courts."  Id.

We believe that the district court acted within its sound discretion in remanding the case to the state court.

V.

Trans Penn has not demonstrated a clear and undisputable right to mandamus.  Section 301 preempts the application of state law only if the application substantially depends on an interpretation of the collective bargaining agreement.  In concluding the employees' claims were not

preempted and remanding them, the district court neither engaged in the unauthorized use of judicial power nor abused its discretion.  Trans Penn has failed to satisfy the stringent standard necessary to issue a writ of mandamus.

For the foregoing reasons, we will deny Trans Penn's petition for a writ of mandamus.