**Martin W. BERDA, and Linda Berda, his wife, Appellants,**

v.

**CBS INC., a corporation, Appellees.**

**No. 88–3405.**

United States Court of Appeals, Third Circuit.

Argued Nov. 1, 1988.

Decided July 20, 1989.

Joseph J. Hinchliffe (argued), Tarasi and Johnson, P.C., Pittsburgh, Pa., for appellants.

Arthur J. Schwab (argued), Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Helen M. Gold, CBS Inc., New York City, for appellees.

Before GIBBONS, Chief Judge, BECKER and WEIS, Circuit Judges.

OPINION OF THE COURT

BECKER, Circuit Judge.

This case involves the circuit-splitting question whether state contract and tort claims for monetary relief brought by a bargaining unit employee against his employer based upon alleged misrepresentations of job security, made before the employee became a member of the bargaining unit, which conferred additional rights to those afforded by the collective bargaining agreement, are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1982).

Appellant Martin Berda ("Berda") brought this suit against his former employer, appellee CBS Inc. ("CBS"), asserting two contract claims (breach of an individual employment contract and promissory estoppel) and two tort claims (fraud and negligent misrepresentation). Appellant Linda Berda, Berda's wife, asserts a derivative claim for loss of consortium. All of the claims are founded upon Pennsylvania law, and the Berdas seek only monetary relief. CBS contends that since Berda's employment with CBS was governed by the terms and conditions of a collective bargaining agreement between CBS and the International Brotherhood of Electrical

Workers ("IBEW")—a contention not disputed by Berda—the state law claims are preempted by the LMRA.

The district court concluded that resolution of Berda's claims was dependent upon the collective bargaining agreement, that the alleged oral contract was inconsistent with the collective agreement, and that the claims were therefore preempted by section 301. Consequently, the court granted CBS's motion for judgment on the pleadings or, in the alternative, for summary judgment inasmuch as the complaint was not filed within the six-month statute of limitations applicable to actions arising under section 301. Because we believe that Berda can establish the allegations in his well-pleaded complaint without asking the court to analyze the collective bargaining agreement, we will reverse and remand to the district court for further proceedings.

## I.

The facts relevant to this appeal are essentially uncontested. On February 27, 1986, while employed as a technician by station WPXI in Pittsburgh, Berda met with Emil Franks and M. Lynwood Heighes, Jr., employees of CBS, to discuss his possible future employment with CBS in Washington, D.C. According to the complaint, Berda was told at this meeting, among other things, that he would be guaranteed employment with CBS for the reasonably foreseeable future, and that any job offered to him would not be seasonal or temporary but would be a permanent position. CBS subsequently offered Berda employment in Washington, D.C., and, in April 1986, allegedly relying upon CBS's promises, Berda and his wife moved to Washington so that he could assume his duties as a CBS technician there.

Shortly after commencing work at CBS, Berda joined the IBEW. The parties agree that Berda's employment at CBS was covered by the terms and conditions of a collective bargaining agreement between CBS and the IBEW. Section 5.03 of that agreement pertains to layoffs, and provides in pertinent part that:

> [l]ayoffs caused by a reduction of staff shall be made in the inverse order of seniority within each of the separate units as defined in Section 5.02 within the jurisdiction of each local union.

Section 5.02 of the collective bargaining agreement contains the provisions relating to seniority of all employees covered by the agreement.

On August 29, 1986, less than five months after he began working for CBS, and in accordance with the terms of the collective bargaining agreement, Berda was laid off as part of a company-wide reduction in force. Berda alleges that CBS had decided prior to the February 27 meeting with him to conduct extensive layoffs in the department and division of CBS in which he was eventually offered employment, and hence that Frank and Heighes knew or should have known that their promises and representations to him were false.

On January 19, 1988, Berda filed a complaint in the Court of Common Pleas of Allegheny County, alleging breach of contract (or, alternatively, promissory estoppel) and tortious misrepresentation. The complaint did not refer to the collective bargaining agreement. CBS removed the case to the district court for the Western District of Pennsylvania alleging both federal question jurisdiction–on the ground that the suit was preempted by section 301 of the LMRA, and thus, stated a cause of action, if any, under section 301, *see Avco Corp. v. Machinists*, 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968)[1]–and diversity jurisdiction.[2] CBS then moved for

---

**1.** Ordinarily, a complaint cannot be removed to federal court, pursuant to the court's federal question jurisdiction, unless the complaint on its face states a federal claim. However, the Supreme Court has found that in certain instances the preemptive force of federal law is so "powerful as to displace entirely any state cause of action." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern Cal.*, 463

U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). In such instances, federal law is said to "completely preempt" state law, and removal is permitted because, although pled as a state claim, the claim is actually considered to arise under the federal law that displaces the state law. *Id.* at 24, 103 S.Ct. at 2854.

judgment on the pleadings or summary judgment.

The district court held that any resolution of the state law claims was substantially dependent upon an analysis of section 5.03 of the collective bargaining agreement between CBS and the IBEW and that Berda's alleged individual contract was "inconsistent with section 5.03 ... and would limit or condition its terms." Dist.Ct.Op. at 5 (June 21, 1988). It therefore held that the claims were preempted by section 301 of the LMRA. Finding that the Berdas could not maintain the suit as an LMRA action because it was not filed within the LMRA's six-month statute of limitations, *see DelCostello v. Teamsters*, 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2293–95, 76 L.Ed.2d 476 (1983) (applying six-month statute of limitation in a section 301 cause of action), the district court dismissed the action. The Berdas appeal. The issue before us is whether the district court was correct in concluding that Berda could bring suit, if at all, only pursuant to section 301.[3]

## II.

### A.

Section 301(a) of the Labor Management Relations Act provides as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or

without regard to the citizenship of the parties.

29 U.S.C. § 185(a). On its face, this statute provides for federal jurisdiction over controversies involving collective bargaining agreements. However, the Supreme Court has concluded that section 301 also expresses a congressional intent that the federal courts develop a federal common law to be applied in suits for enforcement of collective bargaining agreements. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957).

■ When a suit stating a claim under section 301 is brought, state contract law is displaced, and the collective agreement is interpreted under this federal common law. *See Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The purpose of preempting state contract law with a uniform federal law is to allow parties to collective bargaining agreements to have some certainty as to the way that agreements will be construed by courts. As the Supreme Court explained:

[T]he subject matter of § 301(a) "is peculiarly one that calls for uniform law." ... The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying

---

Section 301 of the LMRA is one such instance of complete preemption; it displaces entirely "any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Id.* at 23, 103 S.Ct. at 2853 (citing *Avco*, 390 U.S. at 560, 88 S.Ct. at 1237). Thus, in Avco and subsequent cases, courts have allowed the defendant to remove state contract lawsuits when the suits were preempted by section 301 of the LMRA, even though the plaintiffs had not pled LMRA claims, because such complaints are considered to state a claim, if any, under section 301 of the LMRA. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985).

2. Because the case was properly removed on the basis of diversity jurisdiction. The case will re-

main in federal court even though, as discussed below, we find that the suit was not preempted by section 301.

3. Our standard of review in an appeal from a grant of summary judgment is plenary. *See Joseph v. Hess Oil*, 867 F.2d 179, 181 (3d Cir. 1989). We must view the facts in the light most favorable to the party against whom judgment is sought and draw all reasonable inferences in favor of the non-moving party. In order to affirm, we must conclude that there are no genuine issues of material fact, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might some day be invoked in enforcing the contract.

*Id.* at 103, 82 S.Ct. at 577 (citation omitted). Lack of certainty as to the meaning of contract terms could lead to lack of agreement; thus, if state laws were not preempted, industrial peace would be threatened. *Id.* at 104, 82 S.Ct. at 577.

The Supreme Court has also held that section 301 preemption extends beyond contract claims and reaches certain claims sounding in tort. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). In *Lueck*, the Court noted that if section 301 were held not to preempt state tort law, it "would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* at 211, 105 S.Ct. at 1911. Thus, the Court adopted the following rule: "when resolution of a state-law claim is *substantially dependent upon analysis* of the terms of an agreement made between the parties in a labor contract, the claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1915 (citation omitted) (emphasis added). *See also International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (claim that union breached duty of care to ensure safety of workplace preempted by § 301 because substantially dependent on whether under the collective bargaining agreement the union had assumed this duty).

However, the Supreme Court has made it clear that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Lueck*, 471 U.S. at 211, 105 S.Ct. at 1911. In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court held that section 301 did not preempt a state law tort claim for retaliatory discharge, even though the collective bargaining agreement governing the employment provided for arbitral adjudication of an employee's claim that she was fired without just cause. The Court reasoned that in order to prevail on her retaliatory discharge claim she need not ask a court to interpret the collective bargaining agreement. It found that

even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.

*Id.*, 108 S.Ct. at 1883.

Finally, and, most importantly, in *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), the Court held that section 301 did not preempt a state *contract* law suit in which plaintiffs, who were union members, alleged that their employer breached individual oral employment agreements that promised them " 'indefinite and lasting employment,' " and pre-dated their joining the union. 107 S.Ct. at 2427 (citation omitted). The plaintiffs in *Caterpillar* had been non-union employees of the company at the time the initial alleged promises were made. They were later downgraded to bargaining unit positions, but alleged that they were promised at the time that the downgrades were temporary. *Id.* at 2428. Plaintiffs were subsequently laid off from their bargaining unit positions, and brought suit in state court alleging that their employer had breached the oral agreements in violation of state contract law. The Supreme Court, applying the *Lueck* test, upheld the plaintiffs' right to bring a state contract claim, finding that their "complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address the relationship between the individual contracts and the collective agreement." *Id.* at 2431.

Furthermore, the Court in *Caterpillar* held that the fact that as part of a defense to a state law contract claim an employer

might raise "a federal question, even a § 301 question" does not mean that the claim is preempted by section 301. *Id.* at 2433. The preemption of state law engendered by section 301 is only occasioned when the claim raised "on the face of the complaint" substantially depends on interpretation of a collective bargaining agreement for its resolution. *Id.*

In *Caterpillar*, the Court also revisited its decision in *J.I. Case Co. v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). *J.I. Case* considered the issue of when an employer could have separate individual agreements with unionized employees and when such agreements are subsumed by the collective bargaining agreement such that they can have no independent legal effect. It held that employers and employees could not maintain individual agreements that give an employee less than the employee would be given under the collective bargaining agreement. *Id.* at 336, 64 S.Ct. at 579. To this end, the Court stated that

> [i]ndividual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining, nor to exclude the contracting employee from a duly ascertained bargaining unit; nor may they be used to forestall bargaining or to limit or condition the terms of the collective agreement.

*Id.* at 337, 64 S.Ct. at 580.

However *J.I. Case* did not adopt a blanket rule prohibiting individual contracts with bargaining unit members. The Court stated that employers and employees may enter individual contracts that "embody matters not necessarily included within the statutory scope of collective bargaining," to the extent that such contracts are "not inconsistent with a collective agreement or do[ ] not amount to or result from or [are] not part of an unfair labor practice." *Id.* at 339, 64 S.Ct. at 581. And, most important for the instant case, *J.I. Case* specifically did not hold that individual contracts

*more* advantageous to the employee than the collective agreement are subsumed by the collective agreement. Although acknowledging that such individual contracts can be "disruptive of industrial peace," *id.* at 338, 64 S.Ct. at 581, the Court declared that

> individual contracts cannot subtract from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the law of contracts applicable, and to the Labor Board if they constitute unfair labor practices.

*Id.* at 339, 64 S.Ct. at 581.

Relying on this language from *J.I. Case*, the *Caterpillar* Court rejected the employer's claim that the collective bargaining agreement subsumed the employees' earlier oral contracts for long-term employment, which gave them more rights than the collective agreement did. It stated that "individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law." 107 S.Ct. at 2431. And it explained that the employer's basic error was "its failure to recognize that [an employee] covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective bargaining agreement." *Id.* at 2431–32.

### B.

■ It is undisputed that Berda's employment with CBS was governed by the terms and conditions of the collective bargaining agreement between CBS and the IBEW. However, Berda contends that his contract, promissory estoppel, and tort claims can be resolved independently of the collective bargaining agreement. He asserts that a court, in addressing these claims, need examine only the circumstances surrounding the alleged misrepresentations made to him by CBS before he was hired and the fact that he was laid off.

CBS responds that Berda's claims are based on an alleged individual contract that is inconsistent with the terms of the collective bargaining agreement, and that the claims substantially depend on interpretation of the collective agreement. It therefore contends that the claims are preempted by the collective bargaining agreement and that the action must be brought, if at all, under section 301 of the LMRA.

Several of our sister circuits have been faced with similar questions. The Court of Appeals for the Eleventh Circuit has allowed similar state fraudulent misrepresentation claims to go forward, *see Varnum v. Nu–Car Carriers, Inc.*, 804 F.2d 638, 640 (11th Cir.1986),[4] and a divided panel of the Court of Appeals for the Eighth Circuit has allowed both state fraud and contract claims to proceed based on alleged pre-employment misrepresentations by an employer. *See Anderson v. Ford Motor Co.*, 803 F.2d 953, 955–59 (8th Cir.1986).

In contrast, prior to the Supreme Court's decision in *Caterpillar*, the Court of Appeals for the Ninth Circuit held that state fraudulent misrepresentation claims arising from alleged pre-employment misrepresentations are preempted by section 301. *See Bale v. General Telephone Co.*, 795 F.2d 775, 779–80 (9th Cir.1986). And, after *Caterpillar*, it has maintained this position. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 n. 1 (9th Cir.1987).

All these courts have agreed that the claims are only preempted to the extent that they "substantially depend" on the interpretation of a collective bargaining agreement. However, the courts have differed on the more particular question whether in fact there would be substantial dependence in the case before them. *See Anderson*, 803 F.2d at 958–59 (distinguishing *Bale*). On similar facts they reach different answers.

We believe that *Caterpillar* controls the result in the instant case. As noted above, *Caterpillar* makes clear that in order for there to be section 301 preemption, the plaintiff, in its well-pleaded complaint, must plead an action that requires interpretation of the collective bargaining agreement.[5] *See supra* at 23–24. Consequently, we must turn to the particular claims raised in Berda's complaint and see if they "substantially depend" on analysis of the collective bargaining agreement. We conclude that Berda's claims are not preempted.

### 1. The Contract and Promissory Estoppel Count

In his contract and promissory estoppel count, Berda alleges that CBS's pre-employment representation that he would not be laid off constituted a term governing his employment with CBS on which he relied and that CBS breached that term by laying him off. CBS, however, provides us with no argument of substance as to why this count of Berda's complaint requires interpretation of the collective bargaining agreement.

CBS first contends that the contractual claims are preempted because they relate to "the basic terms and conditions of Mr. Berda's employment." Appellee's Br. at 8. However, Berda's contract claims are very similar to the plaintiffs' claims in *Caterpillar*. In *Caterpillar*, the Supreme Court held that claims of pre-existing employment contracts for long-term employment were not preempted by section 301. *See supra* at 23.

CBS next contends that Berda's oral agreement is inconsistent with sections 5.02 and 5.03 (the seniority and layoff provisions) of the collective agreement, as well as the provision of the collective bargaining agreement that makes the IBEW the exclu-

---

4. However, the Eleventh Circuit has not allowed state law misrepresentation actions when the alleged misrepresentation took place while the employee was already covered by a collective bargaining agreement. *See Darden v. United States Steel Corp.*, 830 F.2d 1116, 1119–20 (11th Cir.1987).

5. The complaint must be "well-pleaded;" thus a plaintiff cannot escape preemption merely by failing to plead essential elements of its case.

sive bargaining agent of the employees, and the provision that requires that supplements and amendments to the collective bargaining agreement must be made in writing and be agreed to by CBS and the IBEW. CBS contends, therefore, that Berda's claims are "necessarily subsumed into the collective bargaining agreement," and thus that Berda's action "arises, if at all, under Section 301 of the LMRA." Appellee's Br. at 10.

However, as noted above, *Caterpillar* made it clear that not all pre-employment contracts are subsumed by the collective bargaining agreement. *See* supra at 24. Indeed, as in *Caterpillar*, the oral agreement at issue in the instant case gave an advantage to the employee, and thus, as in *Caterpillar*, we cannot say that the oral agreement was subsumed by the collective agreement such that no state cause of action can be premised on the oral contract. We note, as the Supreme Court noted in both *J.I. Case* and *Caterpillar*, that whether an employee can get relief under an individual agreement that gives him an advantage beyond the rights he has under the collective bargaining agreement should " 'be determined by appropriate forums under the law of contracts applicable, and by the Labor Board if they constitute unfair labor practices.' " *Caterpillar*, 107 S.Ct. at 2431 (quoting *J.I. Case*, 321 U.S. at 339, 64 S.Ct. at 581).

We are not currently presented with the question whether the existence of a subsequent collective bargaining agreement may constitute a defense to Berda's contract claim under state or federal law.[6] Nor are we presented with the question whether the oral agreement is void because it constitutes an unfair labor practice. We are only concerned in this appeal with section 301 preemption, and the Supreme Court has made clear that section 301 does not preempt state contract causes of action premised on pre-employment agreements that are advantageous to the employee. *See Caterpillar*, 107 S.Ct. at 2431 (plaintiff can assert state contract rights "so long as the contract relied upon is *not* a collective-bargaining agreement"). Because the contract count of Berda's complaint is not substantially dependent on interpretation of the collective bargaining agreement under *Caterpillar*, his contract claims are not preempted under section 301 of the LMRA, and thus we must reverse so that he may pursue them on remand, in the district court.[7]

### 2. The Tort Claims

Berda also asserts claims for fraud and negligent misrepresentation. As noted above, the Supreme Court, in *Lueck*, stated that "[i]f the policies that animate § 301 are to be given their proper range ... the preemptive effect of § 301 must extend beyond suits alleging contract violation." *Lueck*, 471 U.S. at 210, 105 S.Ct. at 1911. However, the Court then set forth the rule that a state-law tort claim is preempted by

---

**6.** As noted above, the Supreme Court has held that the possibility that a federal claim may be raised in the defense of a contract suit does not mean that the state contract claim is preempted under section 301. *See* supra at 23–24.

**7.** CBS urges that language from this Court's opinion in *Malia v. RCA Corp.*, 794 F.2d 909 (3d Cir 1986), requires that we find Berda's prior contract to be subsumed into the collective agreement. *Malia* held that an employee who had formerly been in a bargaining unit, but was promoted out of the bargaining unit, could maintain state law contract and tort claims based on representations made at the time he was promoted that he could be reinstated in the bargaining unit position if he so desired.

In *Malia*, we said that the LMRA does not "prevent an individual—whether an applicant for new employment or a current employee in a supervisory position—from negotiating for a job in a bargaining unit so long as that employment will be on the terms and conditions set forth in the collective bargaining agreement." 794 F.2d at 913. CBS suggests that this language precludes an employee from maintaining a state law suit based on a pre-employment agreement that is separate from the collective bargaining agreement. We believe the language to be ambiguous. However, to the extent that that language suggests that an employee can never sue on a pre-employment agreement giving him more rights than the collective bargaining agreement, we believe that it does not survive *Caterpillar*. As noted above, in *Caterpillar* the Supreme Court allowed employees to sue on an independent contract that gave them additional rights, despite their subsequent union membership. *See supra* at 24.

---

§ 301 only if its resolution is "substantially dependent upon analysis of the terms of a collective bargaining agreement." *Id.* at 220, 105 S.Ct. at 1916.[8]

To maintain a misrepresentation claim under Pennsylvania law, the plaintiff must establish:

> 1) a false representation of an existing fact ...; 2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action ...; 3) scienter, which may be either actual knowledge of the truth of falsity of the representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances, ... 4) reliance which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and, 5) damage to the person relying thereon.

*Shane v. Hoffmann,* 227 Pa.Super. 176, 182, 324 A.2d 532, 536 (1974).

When we consider these elements, it becomes clear that Berda was not required to refer to the collective bargaining agreement in order to state his tort claim. Instead, as Berda contends, in order to maintain a suit for misrepresentation, he need only plead and establish that Franks and Heighes promised him that he would not be laid off for a reasonable period of time although they knew (or were reckless in not knowing) that in fact CBS was planning a reduction in force that would affect him, that he reasonably relied on this misrepresentation, and that his reliance damaged him.

CBS contends that resolution of this tort claim does depend on interpretation of a collective bargaining agreement because "[t]here is no escaping the fact that the alleged misrepresentations relate to the specific terms of Mr. Berda's employment by CBS in a bargaining unit position controlled by a collective bargaining agreement which speaks to those very terms." Appellee's Br. at 16. However, that the misrepresentations concerned layoffs and that there was a provision of the collective bargaining agreement that also related to layoffs are facts of no consequence, because Berda need not refer to the provision in the collective bargaining agreement in order to make out his claim. Despite CBS's intimations to the contrary Berda need not establish that the oral promise made to him prior to his employment differed from the terms of the collective bargaining agreement in order to get relief. *See Lingle,* 108 S.Ct. at 1882–83 (holding that plaintiff may pursue state tort claim that does not involve construing collective bargaining agreement, even if collective bargaining agreement also provides remedy for wrong).

Finally, CBS contends that allowing Berda to proceed with his state law claims would be disruptive of industrial peace. The Supreme Court observed in *J.I. Case* that contracts which give an advantage to individual employees can be disruptive. Demonstrably, regardless of whether the employer is acting maliciously or innocently, the very existence of individual contracts that give certain employees better terms than the union has obtained for them can undermine the employees' support for the union and lead to industrial discord.

However, section 301 preemption is not the only, or even the primary, tool available for promoting industrial peace. As discussed above, section 301 preemption has the limited purpose of ensuring that a uniform law is applied in interpreting collective bargaining agreements. To the extent that conduct (including a company practice of entering into contracts that give advantages to individual employees) constitutes an unfair labor practice that is damaging to the union, the union can file a grievance

---

8. At another point in the *Lueck* opinion, the Court stated that state tort claims would be preempted only if "inextricably intertwined with consideration of the terms of the labor contract". 471 U.S. at 213, 105 S.Ct. at 1912.

Taking this phrase in the context of the whole opinion, we believe that the Court intended this as a statement equivalent to "substantial dependence."

with the National Labor Relations Board. *See Medo Photo Supply Corp. v. NLRB,* 321 U.S. 678, 684, 64 S.Ct. 830, 833, 88 L.Ed. 1007 (1944) (finding it an unfair labor practice to by-pass union and bargain directly with individual employees as to "wages hours and working conditions").

Furthermore, we note, as the Supreme Court noted in *Caterpillar,* that section 301 is not the only type of preemption applicable in labor cases.

> The employer may argue [in the state law suit] that the individual employment contract has been pre-empted due to the principle of exclusive representation in § 9(a) of the National Labor Relations Act (NLRA), 29 U.S.C. § 1599(a).... Or the employer may contend that enforcement of the individual employment contract arguably would constitute an unfair labor practice under the NLRA, and is therefore pre-empted.

107 S.Ct. at 2432. But these doctrines are distinct from section 301 preemption. Only section 301 preemption converts the state law claim to a section 301 claim so that the statute of limitations for section 301 applies. For the foregoing reasons, we hold that neither Berda's contracts claims nor his tort claims are preempted by section 301 of the LMRA, and thus we conclude that the statute of limitations for section 301 actions does not apply. Therefore, the district court erred and we must reverse. We hold that Berda may proceed in the district court on his state contract and tort claims.

### III.

CBS raises two other legal contentions on this appeal. First, it contends that the district court should have dismissed the case as preempted by the National Labor Relations Act, under the doctrine of preemption articulated in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Second, it contends that Berda's tort count actually alleges a wrongful discharge claim and that Pennsylvania law does not allow an employee who was a member of a union to bring such a claim.

These contentions were not passed upon by the district court. Generally, in the absence of "exceptional circumstances," we decline to "consider an issue not passed upon below." *Selected Risks Insurance Co. v. Bruno,* 718 F.2d 67, 69 (3d Cir.1983). We find no exceptional circumstances here. Hence these questions must be addressed by the district court in the first instance.

In light of the foregoing, the judgment of the district court will be reversed, and the case will be remanded for further proceedings.