

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-2003

# Briones v. Bon Secours Health

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3504

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Briones v. Bon Secours Health" (2003). *2003 Decisions.* Paper 433.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/433

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 02-3504

———————

BLANDINA BRIONES; JESSE MANIOS; ELIA SERRANO; DONNA VISCARDI;
FRED MEYER; JOYCE GRAHAM; ESSIE DALLAS; DORA BUTHER;
VALENTINO CHIAVELLO; GABRIEL DEJESUS; MIGUEL MIRANDA;
ELLA PARCHUF; ELIAS RAMOS; EFRAIN RIVERA;
HECTOR VALENTIN; SYLVIA VANCE
Appellants

v.

*BON SECOURS HEALTH SYSTEM; *BON SECOURS NEW JERSEY HEALTH
SYSTEM, INC.; ST. FRANCIS HOSPITAL; *BON SECOURS & CANTERBURY
PARTNERSHIP FOR CARE, INC.; JOHN DOE (1-12); XYZ CORPORATIONS (1-12)

*Per Clerk's Order of 10/8/02

———————

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 01-cv-04146)
District Judge: Honorable John C. Lifland

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 3, 2003

BEFORE: ALITO, ROTH and STAPLETON, Circuit Judges

(Opinion Filed June 25, 2003 )

———————

STAPLETON, Circuit Judge:

Appellants Blandina Briones, Jesse Manios, Elia Serrano, Donna Viscardi, Fred Meyer, Joyce Graham, Essie Dallas, Dora Buther, Valentino Chiavello, Gabriel DeJesus, Miguel Miranda, Ella Parchuf, Elias Ramos, Efrain Rivera, Hector Valentin, and Sylvia Vance (collectively, "Appellants") brought suit in a New Jersey state court against their former employers, Bon Secours Health System, Inc., Bon Secours New Jersey Health System, Inc., St. Francis Hospital, Bon Secours & Canterbury Partnership for Care, Inc., and certain other unnamed defendants (collectively, "Appellees"). Appellees removed the case to federal court. Appellants moved to remand, asserting that they had raised no federal question in their complaint and that there was no other basis for federal jurisdiction. The District Court denied the motion to remand and, later, entered an order dismissing their claims because they were preempted by federal law. Appellants now appeal, challenging both the denial of their motion to remand and the dismissal of their claims as preempted.

As we will explain hereafter, it is clear that the District Court properly dismissed the complaint on preemption grounds. The only debatable issue is whether the District Court, without proceeding further, should have remanded to the state court for it

to address Appellees' federal preemption defenses and any remaining issues. We

conclude that its retention of jurisdiction was appropriate.

I.

In early 2001, Appellees transformed St. Francis Hospital, an acute care

facility, into a rehabilitation facility, resulting in layoffs. Appellees and the employees of

St. Francis, including Appellants, had negotiated, some years before, a Collective

Bargaining Agreement ("CBA") that determined the terms and conditions of the

employment relationship, and remained in force in early 2001. This CBA also provided

procedures to be followed in the event of layoffs, including a process by which

employees, who had lost their positions in one hospital, would be able to "slot"

themselves into positions at another hospital based on seniority and other factors. When

the transformation from acute care to rehabilitation was announced, Appellees and union

representatives discussed the layoffs that would necessarily result and worked out a plan

for their execution. Several appellants were laid off as a result of this process; others

declined to participate in the slotting process and lost their jobs as a result.

Thereafter, the union filed two unfair labor practice charges against

Appellees with the National Labor Relations Board ("NLRB"). The union alleged that the

decision to transform St. Francis, as opposed to another, non-union hospital under

Appellees' control, was the result of anti-union bias and that Appellees had unlawfully

withdrawn recognition of the union as the representative for the employees of St. Francis

3

hospital. The NLRB assumed jurisdiction over the complaints, stating that they alleged violations of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* However, the NLRB found no merit to either claim and dismissed them.

Appellants' original state court complaint contained two counts. Count One alleged a violation of Article I of the New Jersey Constitution which, *inter alia*, guarantees the right of employees to organize and bargain collectively and "prohibits dismissal of an employee because of his or her union activities." *Comite Organizador de Trabajadores Agricolas (COTA) v. Molivelli*, 552 A.2d 1003, 1008 (N.J. 1989). This claim is based on Appellees' decision to stop its acute care operation at St. Francis, a union facility, rather than its acute care operation at Christ Hospital, a non-union facility. Included in Count I was an allegation that this decision motivated by anti-union bias had resulted in Appellees' being offered continuing employment only if they were willing to accept positions with Christ Hospital with lesser pay and benefits than provided in their CBA and to "forfeit [other] entitlements available" under the CBA. SA at 009. Count Two of the complaint asserted a state law "intentional infliction of severe emotional distress" claim based on the same facts as Count One.

Appellees removed the case to federal court, arguing that since appellants' claims required the interpretation of the CBA, § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 144, *et seq.*, completely preempted their claims and jurisdiction in the federal courts was proper. Appellants moved to remand the

4

proceedings to state court, asserting that their complaint did not rely on or mention any federal statute. The District Court denied their motion to remand, noting that Appellants based their claim in part on their loss of rights under the CBA and that their claim could not be adjudicated without a determination of the contours of those rights under that agreement.

After the briefing on Appellees' motion to remand but nine days before that motion was denied by the court, Appellants amended their complaint to delete the reference to the rights secured by the CBA.

Thereafter, Appellees moved to dismiss the complaint on the ground that §§ 7 and 8 of the NLRA and the jurisdiction of the NLRB preempted Appellants' claims.[1]

---

[1]Section 7 of the NLRA, 29 U.S.C. § 157, provides, in relevant part:

[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3) [29 USCS § 158(a)(3)].

Section 8, 29 U.S.C. § 158, provides, in relevant part:

(a) Unfair labor practices by employer. It shall be an unfair labor practice for an employer--
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [29 USCS § 157];
(2) to dominate or interfere with the formation or administration of any

This motion was granted, and this appeal followed.

## II.

---

labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 6 [29 USCS § 156], an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by an action defined in section 8(a) of this Act [this subsection] as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (I) if such labor organization is the representative of the employees as provided in section 9(a) [29 USCS § 159(a)], in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 9(e) [9 USCS § 159(e)] within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) [29 USCS § 159(a)].

6

Since "[r]emoval jurisdiction under section 1441 is . . . wholly derived from original federal jurisdiction," *Roxbury Condo. Assoc., Inc. v. Anthony S. Cupo Agency*, 316 F.3d 224, 227 (3d Cir. 2003), a court must, in determining the propriety of removal, determine whether grounds for federal jurisdiction exist.  Because the parties to this case were not diverse, the District Court was required to determine whether federal question jurisdiction existed.

In general, under the "well-pleaded complaint" rule, a court looks to the face of a complaint to determine whether a federal claim has been raised, because the plaintiff is "master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). For that reason, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393.  However, the doctrine of complete preemption provides an exception to this rule:  "[o]n occasion, the Court has concluded that the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.*  When that occurs, federal subject matter jurisdiction exists and removal is proper.  Section 301[2] of the LMRA is such a statute.  *Id.*  If § 301 applies to a claim in the

---

[2]Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court

7

complaint, therefore, the claim is completely preempted and removal is proper. *Id.* at 394.

Because of the general rule that the plaintiff is master of his claim, where a well-pleaded state complaint contains only claims based on state law that are not "completely preempted," a federal court to which the case has been removed must remand to the state court for a determination of the issues presented. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988). This may include the issue of whether there is a meritorious preemption defense. Conversely, when the federal court determines that the state claim is "completely preempted" by a federal law, it must decline to remand the case to state court and resolve for itself the issues presented. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23-24 (1983).

Section 301 completely preempts claims if they "substantially depend upon analysis of the terms of an agreement made between parties in a labor contract." *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1536 (3d Cir. 1992) (quoting *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). In light of these Supreme Court pronouncements, we have held that there is complete preemption under § 301 where "the plaintiff, in its well-pleaded complaint, . . . plead[s] an action that requires interpretation of [a] collective bargaining agreement." *Berda v. CBS Inc.,* 881 F.2d 20, 25 (3d. Cir. 1989).

---

of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 28 U.S.C. § 185(a).

By contrast, §§ 7 and 8 of the NLRA, the other provisions of federal law relied upon by Appellees in support of their preemption argument, do not "completely preempt" state law and thus provide no basis for removal jurisdiction. *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1396-1401 (9th Cir. 1988). *Cf. Caterpillar*, 482 U.S. at 397-98 (stating that, if the employer so desired, it could argue that §§ 7 and 8 preempted the claim to the state court upon remand).

Though Appellants, after removal, amended their complaint, "the nature of plaintiff's claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands at the time the petition for removal is filed." *Westmoreland Hosp. Ass'n. v. Blue Cross*, 605 F.2d 119, 123 (3d Cir. 1979). Thus, we "base decisions about subject matter jurisdiction after removal on the plaintiff's complaint as it existed at the time that the defendant filed the removal petition." *Prince v. Rescorp Realty*, 940 F.2d 1104, 1105 n.2 (7th Cir. 1991) (quotation and emphasis omitted).

In their state court complaint, Appellants based their claims in part on their loss of rights under the CBA. As a result, those claims could not be adjudicated without interpreting the CBA and comparing the rights, benefits and entitlements there guaranteed with Appellants' positions after the allegedly discriminatory decision to transform St. Francis. That fact alone is sufficient to implicate § 301 of the LMRA and to completely preempt Appellants' claims. *Berda*, 881 F.2d at 25. It necessarily follows that the District Court properly decided to exercise jurisdiction and deny the motion to remand.

III.

Having determined that the District Court properly exercised jurisdiction, we now turn to its disposition of Appellants' claims.

"When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). "Pre-emption . . . is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." *Amalgamated Assoc. of Street, Elec. Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292 (1971). "*Garmon* preemption protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings; accordingly, if a cause of action implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA, the cause of action is preempted." *Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999).

The claims brought by Appellants are preempted by sections 7 & 8 of the NLRA. First of all, "[i]f the [NLRB] decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction." *Garmon*, 359 U.S. at 245. Such a decision

10

has the same effect upon the jurisdiction of a federal court. *Id.* In this case, the NLRB accepted jurisdiction over substantially similar claims brought by the union, and found that while they alleged violations of § 8, there was no evidence of discrimination. Appellants may not relitigate that determination in our court.

Moreover, even if the NLRB had not exercised jurisdiction over the same subject matter, it is clear that both Counts One and Two of Appellants' complaint, at the very least, "arguably implicate" the NLRA. Section 8(a)(3) prohibits discrimination having the effect of encouraging or discouraging union membership or participation in union activities. That is precisely the gravamen of Appellants' claims. This is not a case in which the behavior is of "peripheral concern" to the federal law. *Voilas*, 170 F.3d at 378-79. The allegations are of behavior that, if true, would violate core prohibitions of the NLRA.

## IV.

We will affirm the order of the district court dismissing the complaint.

11

TO THE CLERK:

Please file the foregoing Not Precedential Opinion.


 /s/ Walter K. Stapleton
Circuit Judge