NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2647
_____

JAMES CIFERNI,
                              Appellant

v.

DAY & ZIMMERMAN, INC;
THE DAY & ZIMMERMAN GROUP, INC;
DAY& ZIMMERMAN NPS, INC.;
DAY& ZIMMERMAN MANAGEMENT SERVICES, INC
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No.  2-12-cv-02520)
District Judge: Honorable Eduardo C. Robreno
_____

Argued March 5, 2013

Before:  RENDELL, AMBRO, and VANASKIE, Circuit Judges

(Opinion filed: June 27, 2013)

Patrick F. Flanigan, Esquire    (**Argued**)
239 Dickinson Avenue
P.O. Box 42
Swarthmore, PA  19081-0042

        *Counsel for Appellant*

William J. Delany, Esquire    (**Argued**)
Erica E. Flores, Esquire
Morgan, Lewis & Bockius
1701 Market Street

Philadelphia, PA 19103

*Counsel for Appellees*

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

Appellant James Ciferni, a union employee subject to a collective bargaining agreement ("CBA"), asserted Pennsylvania common law claims for wrongful discharge and refusal to rehire in retaliation for claiming workers' compensation. The District Court dismissed the action on the ground that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), preempted Ciferni's state law claims and, under that federal provision, his complaint was untimely. For the reasons explained below, we affirm the District Court's dismissal of those claims.

## I. BACKGROUND

Appellee Day & Zimmerman[1] is an industrial defense contractor, providing maintenance, labor, and construction services to the power industry. Among other things, it supplies power stations with temporary and seasonal workers during planned maintenance and repair outages. D&Z staffs these positions with workers from local unions pursuant to various CBAs. One such agreement is the National Power Generation Maintenance Agreement ("NPGMA"), a multi-employer CBA with the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-

---

[1] "Day & Zimmerman" refers to affiliated entities Day & Zimmerman, Inc., The Day & Zimmerman Group, Inc., Day & Zimmerman NPS, Inc., and Day & Zimmerman Management Services, Inc. (collectively "D&Z").

2

CIO ("Boilermakers"). At all relevant times, Ciferni, a common arc welder, was a member of the Boilermakers and subject to the NPGMA.

In April 2010, D&Z hired Ciferni to staff a power station during an outage. After suffering a back injury during his first shift, Ciferni filed a claim for workers' compensation in May 2010; this claim was resolved by agreement of the parties in May 2011.[2] When D&Z refused to re-hire Ciferni in January 2011 and again in February 2011, however, he filed grievances through the local Boilermakers' representative, claiming wrongful retaliation and failure to rehire because of his April 2010 workers' compensation claim. D&Z responded that its decision not to re-hire was based on Ciferni's failure to report immediately his April 2010 workplace injury, a violation of the terms of the NPGMA. Both of Ciferni's grievances were finally resolved against him in August 2011 through the NPGMA's grievance process.

Ciferni filed this lawsuit in April 2012 in Pennsylvania court. D&Z removed the action to the District Court on the ground that Ciferni's claims were preempted by § 301 of the LMRA, and then moved to dismiss the complaint for failure to state a claim. Ciferni responded by asking the District Court to remand his suit to state court; he argued that it was within the exclusive purview of Pennsylvania state courts whether a public policy exception should be created to permit union workers to pursue common law wrongful termination and retaliation claims. In May 2012, the District Court issued an order (i) denying Ciferni's motion to remand, based on its conclusion that his claims were

_____

[2] Ciferni filed his claim pursuant to the Pennsylvania Workers' Compensation Act, 77 Pa. Stat. § 1 *et seq.*

3

completely preempted by the LMRA, and (ii) granting D&Z's motion to dismiss on the ground that Ciferni's complaint was untimely under § 301, which requires an employee to file a claim within six months after exhausting his contractual remedies under the CBA.[3] Ciferni timely appealed the District Court's denial of his motion to remand, claiming that his complaint does not arise under federal law within the meaning of 28 U.S.C. § 1331 because his state law claims are not completely preempted under § 301 of the LMRA.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court purported to exercise original jurisdiction over Ciferni's claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a). We have jurisdiction over the District Court's final order under 28 U.S.C. § 1291.

We exercise plenary review of a motion to dismiss. *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 579 (3d Cir. 2003)). In doing so, "[w]e 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them, and we affirm the order of dismissal only if the pleading does not plausibly suggest an entitlement to relief.'" *Id.* (quoting *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008)).

---

[3] It is uncontested that, when Ciferni filed his complaint in April 2012, more than six months had lapsed from the time that any of his three underlying grievances were resolved. *See* J.A. at 23 (workers' compensation claim resolved May 2011), 104–05 (wrongful retaliation and failure to rehire claims resolved August 2011).

4

Similarly, our review of the denial of a motion to remand is plenary "to the extent that the underlying basis is a legal question." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 287 (3d Cir. 2010) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 665 (3d Cir. 2002)). The issue of whether a district court had subject matter jurisdiction is a legal question. *Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 279 (3d Cir. 2013) (citing *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, (3d Cir. 1994)).

District Courts have original jurisdiction over any civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Removal of an action brought in state court to federal district court is permitted in any civil action in which the district courts have "original jurisdiction." *Id.* § 1441(a). Where a state law cause of action is completely preempted by a federal statute, the suit is deemed within the original jurisdiction of the district court and subject to removal. *See AVCO Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 559–60 (1968).

### III.   DISCUSSION

#### A.   Preemption Under § 301 of the LMRA

Ordinarily, the well-pleaded complaint rule prevents an action from being removed to federal court where federal jurisdiction is not presented on the face of the complaint. *Berda v. CBS Inc.*, 881 F.2d 20, 21 n.1 (3d Cir. 1989). The exception to this rule is the doctrine of complete preemption, which applies to claims arising in areas in which "the preemptive force of federal law is so 'powerful as to displace entirely any state cause of action.'" *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation*

5

*Trust*, 463 U.S. 1, 23 (1983)). "'[A]ny civil complaint raising this select group of claims is necessarily federal in character,'" and thus completely preempted by the applicable federal statute. *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare*, 388 F.3d 393, 399 (3d Cir. 2004) (quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987); citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

"Section 301 of the LMRA is one such instance of complete preemption; it displaces entirely 'any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Berda*, 881 F.2d at 22 n.1 (quoting *Franchise Tax Bd.*, 463 at 23). This is so because the LMRA, which restricts the activities and power of labor unions, provides for federal court jurisdiction to enforce CBAs.

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

LMRA § 301(a), 29 U.S.C. § 185(a).

"On its face, this statute provides for federal jurisdiction over controversies involving collective bargaining agreements. However, the Supreme Court has concluded that section 301 also expresses a congressional intent that the federal courts develop a federal common law to be applied in suits for enforcement of collective bargaining agreements." *Berda*, 881 F.2d at 22 (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)). "When a suit stating a claim under section 301 is brought, state

6

contract law is displaced, and the collective agreement is interpreted under this federal common law." *Id.* (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)).

The preemptive scope of § 301 is not limited to suits alleging a violation of the applicable CBA. Rather, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted).

However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* at 211. In particular, § 301 does not preempt state law claims if they exist independently of a CBA and if their resolution does not depend on analysis of the agreement. For instance, in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 406 (1988), the Supreme Court held that a union employee's Illinois claim of retaliatory discharge for filing a workers' compensation claim was not preempted by § 301 because the tort had been recognized as an independent state law remedy and did not require interpretation of the labor agreement. *Id.* at 405–07. Thus, whether Ciferni's claims are preempted by the LMRA depends on Pennsylvania's recognition of state law remedies for union employees and their capacity for resolution independent of the CBA.[4]

---

[4] We reject Ciferni's contention that federal court resolution of his claims is improper because "judicial public policy arises only from litigation in state courts on the merits of the claims." Ciferni Br. at 7. "While the nature of the state tort is a matter of state law, the question whether the [state] tort is sufficiently independent of federal contract

7

**B.** **Wrongful Termination and Retaliation Claims under Pennsylvania Law**

In *Geary v. U.S. Steel Corp.*, 319 A.2d 174 (Pa. 1974), Pennsylvania first recognized a narrow public policy exception to the at-will employment doctrine in holding that at-will employees may maintain tort suits for wrongful discharge when their terminations violate a "clear mandate of public policy." *Id.* at 184–85. This exception was applied in the context of terminating an at-will employee in retaliation for filing a workers' compensation claim in *Shick v. Shirey*, 716 A.2d 1231, 1232 (Pa. 1998).

Pennsylvania courts consistently have held, however, that those common law wrongful discharge suits cannot be brought by union employees subject to a CBA. The first case to consider this issue was *Phillips v. Babcock & Wilcox*, 503 A.2d 36 (Pa. Super. Ct. 1986), which held that the exception established by *Geary* did not apply to union employees. *Id.* at 38. In reaching its decision, the Court reasoned that such an extension would be inconsistent with the exception's purpose "to provide a remedy for employees with no other recourse against wrongful discharge." *Id.* at 37. The Court made clear that the public policy exception was not intended to vindicate public policy in all circumstances, but only where its violation would otherwise go without a remedy, explaining:

> The Supreme Court's decision in *Geary* was clearly concerned with the protection of corporate personnel in the areas of employment not covered by labor agreements . . . . The Court's purpose was to provide a remedy for employees with no other recourse against wrongful discharge.
> Appellant and all like-situated employees are not without recourse when faced with indiscriminate discharge even when the discharge violates

interpretation to avoid pre-emption is, of course, a question of federal law." *Allis-Chalmers*, 471 U.S. at 213–14.

public policy. The collective bargaining agreement in the instant case provides protection against suspension or discharge without "proper cause." Surely, in pursuing a grievance under the provisions of the agreement, if appellant can show that his discharge was in retaliation for his filing a workmen's compensation claim, he will have proved that his discharge was not for "proper cause." It would appear, therefore, that appellant will then be entitled to the remedies provided in the agreement.

*Id.* (internal quotation marks and citations omitted).

Thus, according to *Phillips*, union employees have no need for the protection provided by the public policy exception because their public policy interests may be vindicated through the grievance process, by which they may challenge the basis for the allegedly wrongful employment action and, if successful, obtain any bargained-for remedies. This proposition has been followed uniformly by Pennsylvania courts, *e.g.*, *Cairns v. SEPTA*, 538 A.2d 659, 660–61 (Pa. Commw. Ct. 1998); *Ross v. Montour R.R. Co.*, 516 A.2d 29, 32 (Pa. Super. Ct. 1986), as well as by federal courts interpreting Pennsylvania law, *e.g.*, *Slater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 669 (M.D. Pa. 2009); *Harper v. Am. Red Cross Blood Servs.*, 153 F. Supp. 2d 719, 721 (E.D. Pa. 2001).[5]

In this context, union-represented employees who wish to contest a termination or hiring decision as without proper cause must do so through the grievance procedure outlined in their CBAs and may not assert independent causes of action under Pennsylvania law, as the protection provided by the CBA negates any need for allowing

---

[5] We have similarly recognized in non-precedential opinions that CBA-covered employees do not have state law causes of action in Pennsylvania for wrongful termination. *See Coppola v. JNESO-Pocono Med. Ctr.*, 400 F. App'x 683, 684–85 (3d Cir. 2010); *Raczkowski v. Empire Kosher Poultry*, 185 F. App'x 117, 119 (3d Cir. 2006). We merely note this historical fact, as by tradition we do not cite not precedential opinions as an authoritative basis for a decision.

an independent state law claim in the interest of public policy.[6]  Accordingly, Ciferni had no independent Pennsylvania cause of action for wrongful discharge or retaliation for filing a workers' compensation claim.

\* \* \* \* \*

For the forgoing reasons, we hold Ciferni's Pennsylvania common law claims for wrongful discharge and retaliation are completely preempted by § 301 of the LMRA. Thus the District Court correctly denied his motion to remand to state court.  Because Ciferni failed to file this action within six months of when he exhausted his administrative remedies under the CBA, his complaint was properly dismissed as untimely under § 301.

---

[6] Refusal-to-hire claims are arguably distinguishable from wrongful discharge claims, as CBAs generally contain express prohibitions on terminating without cause but do not necessarily include parallel protections with respect to hiring.  Nonetheless we are satisfied Ciferni was protected adequately from retaliatory hiring decisions by the CBA grievance process such that the public policy exception is not implicated.  Because resolution of his state-law retaliation claim is "substantially dependent on analysis of [the] collective bargaining agreement," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks and citations omitted), it also is preempted by § 301.